UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT TAYLOR and VERONICA J. TAYLOR, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *et al.*,<br><br>Defendants. | Case No. 4:14-cv-00079-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Plaintiffs' Motion to Compel (Dkt. 30), and Defendants'

Motion for Protective Order (Dkt. 32). The parties attempted to resolve the issues raised

in the motions through the Court's informal mediation process, but to no avail. The

motions are now ripe, and ready for disposition.

## LEGAL STANDARD

Unless the Court limits discovery, "[p]arties may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to

the needs of the case, considering the importance of the issues at stake in the action, the

amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden

or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1). Such information need not be admissible to be discoverable. *Id.* Relevant evidence is any evidence tending to make the existence of any consequential fact "more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. Although viewed in light of Rule 401, "the question of relevancy is to be more loosely construed at the discovery stage than at the trial. . . ." *See 8 Wright, Miller, and Marcus, Federal Practice & Procedure*, § 2008 at p. 125 (2010).

ANALYSIS

Plaintiff Veronica Taylor purchased five insurance contracts from Defendants. After tripping and falling, Taylor made a claim on her policies. Defendants denied her claim, and she filed this lawsuit claiming breach of contract, bad faith, and fraud. She asks the Court to order Defendants to produce information regarding the multistate examination of defendant National Union, loss ratios and experience reports, customer complaints, and financial data between the entities.

During discovery, Taylor's counsel discovered that National Union entered into a Regulatory Settlement Agreement pursuant to a multistate examination conducted by several state insurance departments. The examination focused on direct marketing of accident and health insurance from January 2008 to December 2010, plus the monitoring period. This is the same time frame during which Taylor purchased her accident policies from National Union. According to a public Settlement Agreement on the matter, the

state regulators identified and addressed the following matters: a. Product Development, Rate Filing, Form Filing and Marketing; b. Actuarial Procedures and Premium allocation; c. Marketing of Non-Insurance Services; d. Producer Licensing; e. Licensing of Claims Processing Entities and Personnel; f. Claims Processing; g. Vendor Oversight; h. Policy issuance to Groups and Associations; i. Use of Trusts; j. Record Retention; k. Training of Personnel; l. Handling of Consumer Complaints; and m. Specific Requirements for Direct Marketing. Counsel believes National Union ultimately agreed to pay a $51 million administrative penalty. Plaintiffs want this information.

Defendants suggest they are not required to produce the information because the language in Taylor's policies is clear and unambiguous, the information is confidential and privileged, it is attorney/client privileged, it is contrary to due process, and the request is overbroad and irrelevant. The Court disagrees.

First, Defendants suggest that because Plaintiffs have not pled conspiracy or a pattern and practice in their fraud claim, only Taylor's policies are relevant – the other similar policies for other individuals addressed in the multistate examination are irrelevant. The Court disagrees. Although the examination regarding the other policies may not be admissible, it is relevant and discoverable. The information could certainly lead to information about how Taylor's policies were developed, marketed, and sold since Taylor's policies are at least similar to the policies addressed in the examination.

Next, citing Iowa and Idaho code, Defendants suggest that the law requiring insurance regulators to maintain confidentiality makes the examination material

MEMORANDUM DECISION AND ORDER - 3

confidential and undiscoverable. Defendants also suggest the deliberative process

privilege protects the information from discovery in this case. Neither insurance

regulations about confidentiality nor the deliberative process privilege, "which covers

documents reflecting advisory opinions, recommendations, and deliberations that are part

of a process by which Government decisions and policies are formulated," require that

such information is never discoverable in a subsequent lawsuit. *Department of Interior v.*

*Klamath Water Users Protective Ass'n*, 532 U.S. 1, 2 (2001). Such an argument is simply

untenable. The protective order already in place in this case is sufficient to ensure that the

information is not made public. Dkt. 29.

Third, Defendants argue that the information is subject to the attorney-client

privilege. The attorney-client privilege protects confidential disclosures from a client to

his attorney in order to obtain legal advice, plus the attorney's advice in response to such

disclosure. *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009). (Internal citation omitted).

All communication with a lawyer is not privileged simply because a lawyer is involved in

the communication. The attorney-client privilege is strictly construed because it impedes

full and free discovery of the truth. *Id*. Generally, the courts look to an eight-part test in

determining whether information is covered by the attorney-client privilege: "(1) Where

legal advice of any kind is sought (2) from a professional legal adviser in his capacity as

such, (3) the communications relating to that purpose, (4) made in confidence (5) by the

client, (6) are at his instance permanently protected (7) from disclosure by himself or by

the legal adviser, (8) unless the protection be waived." *Id*. The party asserting the privilege bears the burden of proving each element. *Id*.

There may be some attorney-client privileged documents in the examination material. However, Defendants' blanket statement that inside and outside counsel were involved in all aspects of the examination is not sufficient to deem the entire examination record attorney-client privileged. If certain documents are truly privileged, based upon the eight-part test above, Defendants may withhold such documents and produce a privilege log. Otherwise, the Court does not find the examination material privileged.

Fourth, Defendants argue a due process violation if they are required to produce the examination material. Defendants suggest that they can only be punished for the harm done to Taylor, and that the Court cannot adjudicate the merits of another party's hypothetical claim against them in calculating punitive damages. This argument is a little hard to follow, but it does not appear to address whether the examination material is discoverable. Again, some or all of this information may not ultimately be admissible, but it will likely shed light on how Taylor's policies were developed, marketed, and sold, making it discoverable.

Finally, Defendants argue overbreadth, irrelevance, undue burden and expense in producing the examination material and other marketing, sale and adjustment related documents. The Court disagrees, but with a few exceptions. For example, the first five requests cited by Defendants in their opening brief are specifically tailored to address information relevant to Taylor's policies. They are,

MEMORANDUM DECISION AND ORDER - 5

(1) "any complaint, demand, notice, or any other correspondence sent regarding the allegations that were settled in the multistate examination settled in 2012";

(2) "all documents . . . provided to any state, state agency, state insurance regulator, pursuant to the multistage examination settled in 2012";

(3) "settlement agreements, memorandum of understanding, or other agreement between [Defendants] and any state, state agency, state insurance regulator";

(4) "audit results related to products marketed to banking institutions submitted to the State of Ohio Department of Insurance"; and

(5) "any plan to ensure that insurance products sold to consumers of banking institutions will only be marketed in accordance with the form filing requirements and laws of each jurisdiction submitted to the State of Ohio Department of Insurance."

*Def. Opening Br.,* Dkt. 32-1. These requests all relate to the multistate examination, which as stated above, could shed light on how Taylor's policies were developed, marketed, and sold, and explain the very concerns making up Taylor's fraud claim.

The other eleven requests referenced by Defendants all relate specifically to the policies purchased by Taylor, except the request for (1) records retention policies, (2) claims processing documents, (3) the marketing and sale of disability policies, and (4) all communications among Defendants concerning marketing, sale, drafting, and adjustment of accident insurance policies. The requests relating specifically to Taylor's policies are relevant and not unduly burdensome. The other four requests mentioned are too broad in

both substance and time. Accordingly, Defendants need not respond to these four

requests. Otherwise, Defendants shall respond and produce the requested material.

## ORDER

**IT IS ORDERED:**

1.  Plaintiffs' Motion to Compel (Dkt. 30) is **GRANTED in part** and **DENIED in**

    **part** as explained above.

2.  Defendants' Motion for Protective Order (Dkt. 32) is **DENIED**.

DATED: December 2, 2015

B. Lynn Winmill
Chief Judge
United States District Court